**Opinion issued November 20, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00656-CV

———————————

**MICHAEL CHRISTOPHER TATE, Appellant**

**V.**

**MARIA CONCEPCION LANDA, Appellee**

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Case 2019-76987**

---

## OPINION CONCURRING TO DENIAL OF EN BANC RECONSIDERATION

The panel holds that Family Code Section 87.001 allows trial courts to modify protective orders issued under Code of Criminal Procedure Chapter 7B. This is correct, as far as it goes. But that's not far enough to get Tate the relief he requested in the trial court because his request went beyond the sort of modifications Section

87.001 allows. Tate may have won in this Court, but the law requires he lose again when he gets back to the trial court.

Tate is the subject of a lifetime protective order issued under Code of Criminal Procedure Chapter 7B. Chapter 7B protects those who have been the victims of certain criminal offenses. *See* TEX. CODE CRIM. PROC. art. 7B.001(a). Here, the trial court issued a protective order in 2019 after it found that Tate had been stalking Landa. In 2022, Tate began filing motions to convince the trial court to rescind the order.

Many Family Code provisions apply to 7B protective orders. TEX. CODE CRIM. PROC. art. 7B.008. One of those statutes, Section 87.001—"Modification of Protective Order"—allows the trial court, "[o]n the motion of any party," to modify a protective order by either "exclud[ing] an item included in the order" or "includ[ing] any item that could have been included in the order." TEX. FAM. CODE § 87.001.

The Family Code and Chapter 7B part ways regarding who may ask to change a protective order's duration. For other types of protective orders, the Family Code allows the subject of the order to ask the trial court to reduce the duration of the order based on the lack of a "continuing need." TEX. FAM. CODE § 85.025(b).

But the subject of a 7B protective order may not make such a request. TEX. FAM. CODE § 85.025(b-3). Chapter 7B has an exclusive list of individuals who may

2

petition the trial court to rescind the order: the victim, a parent or guardian of the victim, or the person "who filed the application for the protective order" (typically a prosecutor). TEX. CODE CRIM. PROC. art. 7B.007(b). The subject of the order isn't on that list.

The real question in this case is: Can the subject of a 7B protective order use 87.001 to "modify" the duration of the order such that the order ceases to exist? That's what Tate tried to do in the trial court. But that's rescission. *See Rescind*, THE AM. HERITAGE DICTIONARY OF THE ENG. LANGUAGE (5th ed. 2018) ("To make void; repeal or annul"); *Rescind*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("To make void; to repeal or annul"). Tate can't ask for that. TEX. CODE CRIM. PROC. art. 7B.007(b).

Both Tate's original motion and his first amended motion requested only rescission based on lack of a "continuing need." That request was barred by 85.025(b-3). TEX. FAM. CODE § 85.025(b-3). But a year into this litigation, Tate's second amended motion purported to request "modification":

> Movant herein requests this honorable Court modify … the previously issued protective order to restore Movant[']s Second Amendment right to possess a firearm, as is consistent with recent federal precedent[1], to

---

[1]  Tate's motion provided no citation, but this was surely a reference to the Fifth Circuit's then-recent opinion in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023). That opinion held unconstitutional a federal statute that prohibited the subjects of certain types of protective orders from possessing firearms. After Tate filed his motion, the federal Supreme Court reversed that decision and upheld the challenged statute. *United States v. Rahimi*, 602 U.S. 680 (2024).

3

reform the judgment to match the relief requested by the Applicant, and to review the entirety of the restrictions placed on the Movant and use its discretion as to the necessity of all current restriction and the duration thereof.

The third request in this list is meaningless. I don't think a trial court has a duty, on pain of mandamus, to engage in a free-ranging review of a protective order at a party's request. I don't read the panel opinion to be enforcing this request.

The other two requests actually ask for rescission, not modification. The second request is to shorten the order's duration to the period Landa requested. At the hearings, Tate's counsel pointed out that Landa and the State had requested the protective order last three years. Tate made his request more than three years after the order, so granting this request would rescind the order.

The first request is the most interesting. A modification under Section 87.001 consists of either "insert[ing]" an item or "exclud[ing]" an item from an order. Which item could the trial court insert or exclude that would "restore [Tate's] Second Amendment right to possess a firearm"? Tate didn't say.

It's tempting to read this as a request to exclude the item prohibiting Tate from possessing firearms. But excluding that item would not "restore [Tate's] Second Amendment right to possess a firearm." Penal Code Section 46.04(c) makes it an offense for the subject of a Chapter 7B protective order to possess a firearm without regard for whether the order has an explicit no-guns provision. TEX. PEN. CODE

§ 46.04(c). Section 46.04's prohibition lasts until "the expiration of the order." *Id.* The only way the trial court could grant Tate's request is to rescind the order.

If there was any remaining doubt that Tate sought rescission, the motion's conclusion removed it: "Respondent/Movant Michael Christopher Tate respectfully requests that the Court grant Movant's motion to modify the existing protective order and *withdraw and rescind the protective order* and for all other relief to which Michael Christopher Tate is justly entitled" (emphasis added). As the State noted in its briefing to this Court, even after Tate started using the word "modify," his actual request was rescission.[2] Tate has never suggested the inclusion or exclusion of a specific item would help him. His complaints have been about the existence of the order, not its specific content.[3]

When Tate first presented his "modification" idea, the trial court understood that Tate was trying to use 87.001 to get around 85.025(b-3) and 7B.007. The trial court was initially receptive: "[85.025](b-3) does not tell me that I cannot modify

---

[2]     The motion is filled with references to rescission, and the "continuing need" standard used to review protective orders under 85.025(b). *E.g.,* "[The trial court] is requested to modify the existing lifetime order and/or rescind the order because a sufficient time has elapsed and there is no longer a continuing need"; "The record reflects scant evidence in support of a continuing need for the Protective Order to remain in place beyond the time of this motion"; "Furthermore, no other party can produce any evidence what-so-ever that would support this Court's finding a continuing need for the Protective Order to remain in place."

[3]     Tate's motions claimed the existence of the order made it difficult to find consistent work. Modification would not fix that problem.

5

this protective order." The trial court believed the lifetime duration of the order was inappropriate and said it would change the duration if it could.

At the next hearing, however, and in its written order denying Tate's motion, the trial court said it believed it could not use 87.001 to modify a 7B protective order. By stating its reasoning so broadly, the trial court was incorrect. The panel opinion uses standard statutory construction to show, correctly, that a trial court can use Section 87.001 to modify a Chapter 7B protective order.

But taking standard statutory construction just a step further shows this authority does not include rescission at the subject's request. Had the trial court restricted its reasoning to the issue at hand and stated it could not use 87.001 to grant Tate's request to modify a 7B protective order *into nonexistence*, that would have been correct.

We interpret statutes, if possible, to give effect to each statute. *Tiscareno v. State*, 608 S.W.3d 434, 438 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). Section 7B.007(b) limits the individuals who can request rescission. This prohibits the subject of a 7B protective order from requesting rescission. But Section 87.001 allows "any party" to request a modification. Allowing the subject of a 7B protective order to request recission by labeling it a modification request under 87.001 leaves 7B.007(b) without effect.

Similarly, while 85.025(b) allows the subject of a protective order to ask the trial court to review the duration of the order for a "continuing need," 85.025(b-3) probits the subject of a 7B order from seeking such review. If 87.001 allows the subject of a 7B order to seek "modification" of the duration based on the lack of a continuing need—which is what Tate did—then 85.025(b-3) has no effect.

Tate's interpretation would gut 85.025(b) in a way that affects other types of protective orders as well. There are no time restrictions on an 87.001 motion to modify. But Section 85.025(b) requires individuals subject to non-7B protective orders to wait one year after the order issued before requesting reduced duration. If 87.001 allows the subject of an order to "modify" it into nonexistence at any time, then the one-year requirement in 85.025(b) is also without effect. *See In re Bird*, No. 12-19-00184-CV, 2019 WL 2710249, at *3 (Tex. App.—Tyler June 28, 2019) (orig. proceeding) (holding trial court did not abuse its discretion by denying subject's motion to vacate protective order one month after order issued because trial court "only possessed jurisdiction to modify, not vacate, the protective order at the time [subject] filed his motion"); *Cooke v. Cooke*, 65 S.W.3d 785, 788 (Tex. App.—Dallas 2001, no pet.) (noting that trial court can rescind protective order after one year but "trial court's jurisdiction during the first year of a protective order is limited to modification of the order").

The Legislature placed explicit restrictions on rescinding protective orders and seeking reconsideration of their duration based on lack of a "continuing need." The Legislature did not place similar restrictions on "modifying" them. Ordinary rules of statutory construction show that whatever else an 87.001 "modification" may or may not be, protective orders cannot be "modified" out of existence, nor can the duration be "modified" based on the lack of a continuing need. *See Tiscareno*, 608 S.W.3d at 438 (courts interpret statutes to give effect to each statute, and to whatever degree statutes conflict the more specific statute prevails). Had the Legislature intended for a catchall "modification" statute to cover these situations, it would not have written more specific rules for them.

If I were deciding this case in the first instance, I would deny Tate's request for mandamus relief. Mandamus is a discretionary writ. The trial court's reasoning was incorrect in the abstract, but its ruling was the only correct one available. That's not a matter an appellate court should concern itself with. *See Calloway v. State*, 743 S.W.2d 645, 651–52 (Tex. Crim. App. 1988) ("Further, it is well established that the mere fact that a correct ruling is given for the wrong reason will not result in a reversal.").

Rather than look at the trial court's correct ruling, the panel looked at the trial court's incorrect reasoning. This approach has led the panel to convert an appeal of an unappealable order into a mandamus and order the trial court to conduct a hearing

where the trial court will be obliged to issue the same ruling it did the first time. This Rube Goldberg affirmance shows the wisdom of the *Calloway* rule.

With that said, there are standards for en banc reconsideration, and this case doesn't meet them. The panel opinion doesn't conflict with our precedent, and I do not consider this matter an "extraordinary circumstance" because nothing will come of it once it goes back to the trial court. Therefore, with these notes, I join the Court's denial of en banc reconsideration.


Clint Morgan
Justice